Case number is 22-17-28, 22-17-33, 22-17-37, and 22-23-18. Ms. Riordan? Yes, thank you. Good morning, Your Honors. May it please the Court, my name is Shannon Liss Riordan. I represent all of the plaintiffs here, and I've asked to reserve 8 minutes of my 30 for rebuttal. So, Your Honors, there are a lot of issues before you today. I want to start with and focus on the piggybacking issue, because that is the critical issue which determines whether or not these 30 plaintiffs, as well as hundreds of others, can even pursue their claims against IBM. But, Counsel, isn't the weight of authority that piggybacking is a procedural, not substantive? No, it's not, Your Honor. So, I'm going to get to that, and I'm going to explain to you why piggybacking in statute of limitations is a substantive right, and why, even if it is not, IBM could not use it to preclude these plaintiffs from pursuing their claims in arbitration. So, let me just start by saying that there is no question here that these plaintiffs all could have pursued their claims in court. That is not disputed. So, IBM's arbitration agreement took away a right that they would have in court, and as a result of it, they were not able to pursue their claims. And IBM was not allowed to do that because it had not complied with the OWBPA. Now, there's a lot of discussion about whether or not statute of limitations and piggybacking is procedural or substantive, but first, it is substantive, but even if it is not, let me explain to you why that doesn't matter here. So, substantive. Judge Pooler, your decision in Ragon, I think, supports the fact that timing considerations and an abrogated statute of limitations is a substantive issue, and that type of clause should be severed from an arbitration clause in order for it to be enforceable. Your dicta, I think, clearly expresses that. The Supreme Court has repeatedly held that statute of limitations are substantive issues in Brooklyn Savings Bank, in Davis v. Mills. Recently, the Sixth Circuit in the Thompson case said that timing issues, statute of limitations, are substantive. In the Thompson case, which the EEOC strongly stated its opinion through an amicus brief there, and that built off of the prior Sixth Circuit Logan decision, in the First Circuit, Anderson v. Comcast, the First Circuit severed a shortened statute of limitations provision in an arbitration agreement based on it being substantively unconscionable. It severed a one-year statute of limitations. So it doesn't matter if the statute of limitations is different, but here it's the same, isn't it? No, it's not, because in court, the plaintiffs would have had less than 300 days from filing a charge. Yes, so the piggybacking principle is baked into the ADEA. That's an exhaustion idea. The piggybacking isn't really part of, first of all, the arbitration agreement abrogates the piggybacking aspect because it talks in terms of if this claim has to be filed with an agency, then the timing limit is set. So it doesn't require the filing with the agency, correct? That's correct, but in court, plaintiffs who are piggybacking don't have to file with the agency either. Well, how would the piggybacking work here, then? So you'd want us to read the arbitration agreement to say that if someone else had filed a similar claim, then that the 300-day, that the arbitration agreement is to be read to be told for a period of time? Well, yes, that is how we read the agreement. It's not how the arbitrators read the agreement. Is the arbitration agreement ambiguous in that regard? Yes, we believe it's ambiguous, which is why we went first. If we disagree with you- Yes. Then how does that, what does that do with you? If the arbitration agreement is clear on its face that there's no need to file with the EEOC, or that you're entitled to some form of piggybacking relief, what happens then? It should be severed because it is, A, substantively unconscionable, and, B, even if it's not substantively unconscionable, it impeded the plaintiff's ability- Congress did create the piggybacking relief. Yes. A court did. No, no, no. It's baked into the statute, and the reason for that is recognized by this Court in Tolliver. Right.  voice, a charge needed to be filed. So this Court in Tolliver interpreted the 1978 amendment to essentially bake piggybacking into the statute, and what the Supreme Court has repeatedly said, as noted in Logan, that, and it's in Brooklyn Savings Bank, is that when a limitations period is in a statute that provides relief, then it is substantive, and it can't be waived, and particularly here, it can't be waived, even if it is procedural, as, again, Your Honor, Judge Pooler recognized in Guyton, because in Guyton, the Court addressed several clearly procedural points, and held that the challenges to, the plaintiff's challenges to those procedural issues limiting their ability to pursue their claim did not succeed because the plaintiffs provided no evidence that their fears were well-founded, that they were not going to be able to pursue their claims in arbitration. And so just like this Court held in American Family Life, and the District Court in the Loan Decision, plaintiffs can show that if they go to arbitration, they're not going to be able to pursue their claims, regardless of whether they're substantive or procedural, because Judge Pooler, in Guyton, you were specifically looking at procedural issues. You were looking at whether or not the limitations on discovery, or the fact that the arbitrator didn't have to do a full reasoned decision would impede the claims, and there you said the plaintiff had shown no evidence that that was the case. Gilmer requires that if someone, Gilmer makes clear that you can, you're required to pursue your age discrimination claim in arbitration, but you have to be able to vindicate your rights. And here, particularly because the OWBPA was not followed, the plaintiffs were not able to vindicate their rights. Now, coming back to the piggybacking issue, the piggybacking issue is not just an exhaustion issue. It has been repeatedly recognized to be a statute of limitations issue. The District Court in Holowecki, Judge Pooler recognized that. In Leal v. Walmart, piggybacking tolls the statute of limitations. And Cronus recognized the Second Circuit has aligned itself with the broadest interpretation of the piggybacking rule. What the plaintiffs here missed, which was substantive, and again, it doesn't have to be substantive, but what they missed out on was the opportunity to take advantage of the EEOC conciliation process. Because think about it this way. If you get terminated, Congress recognized that you might not realize right off the bat that it was a result of age discrimination. That's part of why the OWBPA requires that the employer give disclosures about the ages of people laid off and not laid off, so that you can figure it out and try to figure out if you have a claim. But then you also have the right to go to the EEOC, which is a very simple process. You don't need a lawyer. You just file a charge, and the EEOC does the work and investigates it for you. And then you don't have to actually file your own claim in court or in arbitration until you've had the opportunity to figure out whether you actually have a valid claim. Because otherwise, this would encourage everyone to just file a charge immediately upon being terminated, even if they didn't know whether they actually had a claim. So this practice that IBM took away through its arbitration agreement essentially required plaintiffs to go straight to arbitration, hundreds of them, even more than 1,000 of them, rather than having the opportunity for, for example, the EEOC to investigate and then try to conciliate, saying that you had to file right away. Most people in Congress recognized are just not going to know right away. That's why it's built into the statute that- Can we go back to the procedural substantive point? Yes. In particular, 1410 Plaza, which I didn't see addressed in your reply briefs, the Supreme Court said arbitration itself is a procedural mechanism, not a substantive one. So how can we say that the piggybacking rule or the timeliness provision is substantive when the Supreme Court said that the whole arbitration process itself is procedural? Right. So, Your Honor, in Penn Plaza, the court said you can pursue your claim in arbitration. You might not like being there, but you can at least pursue your claim there. So there's nothing about being in court itself that is substantively, substantive and that is required. And then, but here, the plaintiffs were not even able to pursue their claim. Now in Essel, Your Honor, the court held that a class waiver, a collective action waiver was procedural and thus was not, it was not, there was nothing wrong with it being precluded by the arbitration clause. But this case is very different from Essel because Essel, the plaintiffs could pursue their claims. It's just had, it had to be an arbitration. Here the plaintiffs had no problem with pursuing their claims in arbitration, but they were blocked from doing so. Which is a huge difference. They were blocked from doing so because they filed late. They filed late because they didn't. You haven't argued that, like the situation in Thompson where there was a disconnect between the period of time to file and the possibility that there might be intransigence by the employer. And the correlation with the EEOC investigation side of it that the circuit, that circuit found determinative. And you cite Thompson all the time. But you're not taking the position that these claims could not be, these claims could not be put into arbitration. You're not taking that position.  Yes. And many- Then what is it, I don't understand. I don't, so- They weren't able to pursue them. The 300 days is okay? No, they weren't, they didn't have any way to know, really, within 300 days that they had age discrimination claims. Well, it's very clear. It says you have to file within the time period in which you're required to file. If the claim is dependent on filing a claim with an administrative agency, you have to file within that time period. It's very clear. Right, right, right. But it's not enforceable because it severely truncated the time the plaintiffs would have had in court. In court, they would have had years to file the claim. Well, I understand that. But the issue is whether, the issue is whether that timeline in some way felt unduly impinged upon their right. And it did because none of them were able to pursue their claims. So, and OWBPA wasn't followed. So, it couldn't, they couldn't be blocked from pursuing their claims. Well, the fact that they didn't file doesn't mean that they couldn't file. Well, they didn't have any way to know at that point that they were victims of age discrimination. The EEOC didn't issue their report until August 20. Until 2020. 2020. Right. What happened was the Russus class action case that we filed in 2018 started to get attention. And when people saw that, they started to try to bring claims. Now, what happened here was that the plaintiffs basically, we were punished. Our clients were punished by following Supreme Court and Second Circuit case law and going straight to arbitration. We recognized the arbitration clause itself was enforceable. So, we went to arbitration to try to pursue the claims. And it was only when we got there that all of the arbitrators, or most, not all, but most of the arbitrators started ruling that the statute of limitations was 300 days and that they couldn't pursue their claims there. Well, many of the laid off employees decode arbitration and did get awards. Is that correct? Yes, that is correct. Of course, we don't know what those awards are because of the confidentiality. Well, you know, Your Honor, because they're in the sealed documents. Right. Yes. Do you have any idea of how many people went to arbitration successfully of the 20,000 laid off? We represent more than 1,000 employees, Your Honor. Some of them didn't take advantage of the right to arbitrate in a timely manner. Some portion of them did because they had just been laid off within a short period of time before the Ruse's case started to get attention. Most of them did not know that they had a valid age discrimination claim until they started hearing about it. And the whole purpose of the opt-in procedure that is baked into the FLSA provides for people getting notified because you wouldn't know that you have an age discrimination claim until, A, you see those OWBPA disclosures that show, oh, here are the ages of the people who got laid off and here are the ages of the people who didn't. And, B, you hear that other people are gathering together to bring a claim. And so you realize then that you have a claim. Now, once they realize that- On an anecdotal date of talking to people that were also laid off, they didn't get official notice until August 2020 that there was an effort to fire older workers. Correct, from the EEOC. It took the EEOC more than two years after that. That's correct. So what the plaintiffs here missed out on was that EEOC conciliation process, let the EEOC do the heavy lifting of investigating and figuring out if there are claims here, and then you can join in. They missed out on that. They had to file right away before they would have had any reason to know that they were victims of age discrimination. And that took away their right to be able to bring this claim. And that is, whether you consider it to be a substantive right, as you refer to in Ragone, or a procedural right, as in Guyton, it's not allowed. Under Gilmer, you have to be able to pursue your claim, particularly here where there was an OWBPA notice provision that was not provided. Maybe at this point you could turn to the individual cases, and I think Chaskin in particular raises the question of how would this work? How would you reopen an arbitration, as I understand it, after 24 of the 26 plaintiffs lost? There was no appeal within the three months, is that right? Yes, that's right. Two-year period? Yes. If I could just wrap up one last point from the piggybacking issue. As I was saying, the plaintiffs here effectively were punished for having followed Supreme Court case law and Second Circuit case law by going straight to arbitration. Had they done the usual thing, which was go to court, make up some argument to challenge arbitration, which is very difficult these days, and then the court said, no, no, you have to go to arbitration, and if they had gotten into court, made use of piggybacking to be in court, and then were compelled to arbitration, I find it highly unlikely that they then would have been turned away from arbitration because it was too late. So essentially they were penalized for following the law, going straight to arbitration, waiting to see if they were turned away because we had a good faith argument that the arbitration agreement would allow them to proceed, but we followed, for example, the case law that I mentioned, the American Life Guidant and others, and Green Tree, where you can't show that you can't arbitrate until you go and try and build a record, which is exactly what we did. Now, turning to your question, Judge Park, so what IBM is focused on is that somehow 24 of these plaintiffs should have moved to vacate the arbitration awards against them, but this is not an issue that could be raised through a motion to vacate. The only way you can vacate an arbitration award is if you show something like fraud. You can't just show that the arbitrator made a mistake. What we're trying to do here is very different. What we're trying to do is get a declaratory judgment under the case law that says that these provisions are not, the provision, particularly the timeliness provision in the confidentiality agreement, impeded their ability to pursue their claims. We didn't know that was going to happen until we went to arbitration and saw what happened in case after case after case. So it's not something that we could have even sought to vacate. The 11th Circuit decision in Smith shows that. There we tried a motion to vacate, and we didn't have the grounds to vacate it because we couldn't show fraud in the arbitration. So what we're saying is that if this court- Did the courts arbitration and move to stay that arbitration until the EEOC issued their report? We tried. We tried moving to stay. We filed. IBM pushed to have the arbitrations go forward, and the arbitrator said, nope, we're moving forward. So it didn't work. So basically, if the argument is we should have- IBM notes in its briefs that what we should have done, they claim, is go to arbitration, file the claim, and then move to stay until we get a decision in court. Essentially, we did that, and we were told, no, you have to keep going. We would have been back in the same situation as if we had gone to court initially and said, strike this clause, and the court under Guyton and other cases would have said, well, how do we know that you're not going to be able to pursue your claim? So it wasn't until we were in arbitration and the claims got dismissed that we knew that they couldn't pursue their claims because the first thing that happened in those arbitrations was the arbitrators dismissed the claims, and then the cases were closed. So then we go to court to seek a declaratory judgment that the timeliness provisions and the confidentiality provisions are not enforceable. Why couldn't you have done that- I'm sorry. Why couldn't you have done that in seeking a stay of the arbitration, that the very agreement that takes you to the arbitration is either unconscionable or void, it's against public policy, and therefore it's not an arbitrable matter? No, no, no. Because we knew that we couldn't prove an unconscionability challenge because there you need both procedural and substantive unconscionability. We weren't arguing that there was procedural. We were just saying, like in Ragon, substantive provisions had to be snipped out. But if we had asked for that before we got the rulings from the arbitrators- You mean that it was arbitrable. I'm sorry? Once you select that form, you're stuck with it. No, no, no. Well, I asked you at the very beginning if you thought that this fit within the arbitration agreement, and you said yes. And if you had told me no because it was unconscionable and therefore the people that signed those agreements shouldn't be held to them and you had a reason for that, that would be a different case. But in this case, you concede arbitrability. No, no, no. Yes, we concede arbitrability, but we didn't know until we got those rulings from the arbitrators. You didn't know. You knew how the EEOC worked. You knew that people that get fired individually or get laid off don't know whether they do or they do not have a claim. The EEOC didn't just exist recently, and there's a wealth of case law. We know about the piggyback doctrine that this court instituted. We didn't know. Wait a second. So don't tell me that you didn't know. You knew full well the nature- Your whole argument is that the nature of these claims is that these people wouldn't know they were discriminated against. You knew that at the time that they were fired. No, no, because they didn't have the OWBPA disclosures, and some of them had been fired before we started. What was it that you learned that suddenly made you realize that they had claims? Well, they didn't have the OWBPA disclosures, which would have allowed them to compare the ages of the people laid off and not laid off. They didn't have that when they went to the arbitration either, did they? They didn't have the EEOC. We had the EEOC later, and what's supposed to happen, the EEOC investigates, so we started investigating. But the point is that we didn't know when we went to arbitration that the arbitrators were going to say that piggybacking didn't apply. We thought piggybacking should apply, and some arbitrators found it. Did you know it was a possibility? Some arbitrators found that piggybacking applied. So we didn't know. We couldn't come to this court or a district court to challenge it until we had a well-founded foundation to show that we weren't going to be able to succeed in arbitration. So that's why we didn't go straight to a court to challenge this provision because we couldn't have. We needed to wait until we had developed the record, which we then did. So the declaratory judgment action, Judge Park, that we pursued is the proper way to challenge this. We went first back to the collective action we had filed in RUCIS and asked the court there to sever it, and Judge Caproni said no, we couldn't do that on a class basis because there was a class waiver. So we filed more than 200 people opted into RUCIS to seek that. Instead of flooding the district court with more than 200 individual claims, we took the 24 who had already been ruled against in arbitration plus a couple more who hadn't had their arbitrations yet to pursue this in the district court through declaratory judgment individually. And then, of course, they all got consolidated anyway, most of them in front of Judge Furman. So your time is running down here, and I'm wondering if you could just quickly explain any differences or highlight anything about the Chandler, Lodi, and Taverner cases that should be attended. The one point in particular I do want to highlight is Patricia Lodi. And she, I believe you were speaking to her, Judge Pooler, in your Holowecki decision. Patricia Lodi is one person who has an argued claim here who doesn't need to rely on piggybacking. She is timely herself because she filed at the EEOC, and then she filed her claim 90 days before she received her right to sue letter because she didn't even receive her right to sue letter until a couple years after she had filed her claim. So under Holowecki, she is timely. She is the poster child of what went wrong here with plaintiffs not getting the advantage of the EEOC conciliation process. She filed with the EEOC. She waited for the EEOC to investigate. The EEOC did investigate. They found reasonable cause that there was discrimination. She tried to get a relief out of them. Their conciliation efforts failed. She wasn't able to get anything out of the EEOC, so then she decided to pursue her own claim, and at that point was told she was too late. Times 22. All right. Thank you, Your Honors. I look forward to addressing you on rebuttal. It's time for rebuttal. I wish you would be able to see my head. Thank you, Your Honors. May it please the Court, Judge Park, Tracy Lovett for IBM. I just wanted to start quickly on sort of a roadmap for you all to put a little structure on the chaos. I view the common issues that apply to all cases as timeliness, the motion to seal, and ripeness on the confidentiality. So I'm going to try to cover those three common grounds. What was the third one? The confidentiality ripeness issue, the mootness issue. And then as we get further down, addressing the case-specific questions that you might have, but that's generally how I'd like to frame that up, of course, subject to whatever you all want to do. There's two primary flaws to plaintiff's timeliness argument. The first is that piggybacking has nothing to do with these arbitrations. The arbitration agreements do not require the filing of EEOC charges, and piggybacking is merely, as Judge Wesley pointed out, an exception to the exhaustion requirement. If no exhaustion is required, there's no need to be talking about the exception. Then also, the ADEA does not require the charge process in arbitration. The charge requirements and timeliness requirements of the ADEA expressly apply only to civil actions. The language of the ADEA is no civil action shall commence. Congress didn't say anything about arbitration. You have to look to the FAA to figure out what you need to do to start an arbitration, and the FAA says look to the party's agreements. Counsel, there's no question that for those people laid off, they retained the right to sue under the ADEA because IBM didn't give them the required notice. Is that correct? No, that's not correct. Well, tell me why it's wrong. Because we didn't require plaintiffs to waive their ADEA claims. You didn't require them because you couldn't, because you didn't give them the appropriate notice. Isn't that correct? That's how OBEPA works. You have a choice. You can either give the disclosures and have waiver of the claim or not give the disclosures and allow the claim to proceed. We allow the claim to proceed, but so does arbitration. Did you give the appropriate notice when these people were terminated? Yes, under OBEPA we did. We didn't require them to waive their claims. But their claims were not waived. They could always bring ADEA claims, correct? In arbitration, correct. They waived the right to bring it in court, and that was upheld in Estill, and they waived the right to bring a collective action, and that was also upheld in Estill. So they have the right to bring the claim. It's only in arbitration. And then the question becomes, well, what governs timeliness in the arbitration context? And what governs timeliness in the arbitration context isn't anything in the ADEA. The ADEA's language is specific to civil actions. It doesn't speak to arbitrations. And what does speak to arbitrations is the parties' agreement and the FAA. The second, and Gilmer tells you, and I want to address this because you were asking some questions about the charge process and the EEOC findings. Gilmer instructs that because arbitrations are disconnected from the EEOC charge process, the EEOC conciliatory process cannot preclude arbitration. That's Gilmer. So you can't have a rule that says you have to wait for the EEOC process to conclude before you can start arbitrations, or you run afoul of Gilmer. Right, but these people didn't get the EEOC report until after many of them had lost the right to even go to arbitration. Gilmer says that doesn't matter because the EEOC process is separate. But it mattered to all the workers who waited for the report and then lost the right to get any relief. But they didn't have, where and how they filed their claims is governed entirely by the arbitration agreement. There was no caveat or carve-out for an EEOC process. The arbitration agreement says you have to file your claim in 180 days or 300 days depending on your jurisdiction. And to answer one of the other questions that's buzzing around about, you know, in the arbitration agreement, that issue is committed to the arbitrator. And the arbitrator has decided what the timeliness provision means, and he's found it's unambiguous. It's the 180-day to 300-day rule. Would you agree with me that if anyone waited prudently, I would like to think, for the EEOC report, by the time they got that report, they had lost the right to get any relief. Isn't that correct? If they didn't file a- Is that correct? Yeah, if they did not file an arbitration claim- If they waited for the report to know that IBM had violated their right, there was workplace discrimination, if they waited for that report, they had lost the right to get any relief. Is that correct? Under the arbitration agreement, yes. And Gilmer says that doesn't matter because arbitration is separate from the EEOC conciliatory process. And so if you enter an arbitration agreement, Gilmer tells you read it, and you abide by what's in the arbitration agreement. You're not giving up the EEOC conciliatory process. You can still participate in it. So many people did not sign the arbitration agreement. Isn't that correct? I'm sorry. Many people, many laid-off workers did not sign the arbitration agreement. I don't know the exact numbers, but there are some that signed, some that didn't. And as counsel herself said, there are many arbitrations that were timely. There's been a slew of arbitrations. And the other sort of fundamental disconnect in plaintiff's argument is piggybacking isn't timeliness in the air. It doesn't eliminate. I'm sorry. The ones who were timely proceeded without waiting for the EEOC? Correct. Correct. So they didn't have a piece of evidence that said, look, you discriminated in the workplace. Whether that evidence, they did not have that evidence, but they could, in arbitration, get the underlying evidence. You have a discovery process in arbitration, which will allow you to get the data that plaintiffs are talking about. They didn't need the EEOC process, which is looking, by the way, at a different issue. It's not looking at individual terminations and saying this person's line manager had a discriminatory intent and this happened. That's not what the EEOC is doing at all. It's looking at something on a much greater scale. So it doesn't even have relevance to the underlying individual terminations. What it does is the evidence that you get from the arbitration discovery process, another issue that's committed to the discussion of the arbitrator. And I just want to, it's probably not the right place to do this, but I do want to clarify this notion that plaintiffs are being deprived of something important in arbitration because of the confidentiality agreement. I'm not going to talk about confidential arbitrations, but it's a false narrative to say that this evidence isn't coming into the arbitrations, that this being the stuff under seal because of confidentiality. There is a single published decision involving the arbitration agreement and discovery in an arbitration. It's the Hewlett decision, 2022 West Law 1384-3124. And in Hewlett, the court- Did you cite that in your brief? Oh, I can't- Could you leave the citation with the clerk? Yes, absolutely. And in this case, the plaintiffs, it was the IBM arbitration agreement, the plaintiffs brought a motion to vacate on the ground that the arbitrator did not consider this kind of evidence, the evidence that you're talking about. And they brought the motion to vacate, and the court explains the arbitrator's rationale for not considering that evidence as follows, and I'm going to quote, the arbitrator found there was simply no evidence discovered or offered by Ms. Hewlett that shows that any of the decision makers involved in her termination were acting upon or even aware of an edict on high with respect to IBM's older employees. It's a relevance determination. I mean, just because there is an EEOC report out there- It was a coincidence that they just fired all the people over 40, right? This isn't a class or collective action. These are individual actions in which each individual must prove their termination. And they didn't know what was going on company-wide. Only the company knew. This district of Massachusetts case is explaining why the arbitrators are saying that doesn't matter. What matters is proof of an individual termination, your direct line manager, and the EEOC has nothing to do with that. We're getting sort of further afield from piggybacking, which I want to address the substantive Estill 14-10 Plaza issue. And there's three primary flaws with the argument that piggybacking is a substantive guarantee. The first is it can't be a substantive guarantee because piggybacking is at best, and Judge Wesley, I think you pointed this out, it's tolerated by the ADEA. It's not prohibited by the ADEA. But there's nothing in that act that actually makes a right to piggybacking. In fact, you can't because piggybacking is episodic. It's happenstance. It's ephemeral. You could have, and this happens all the time, plaintiffs wait and decide they're going to piggyback, and there's no charge that's timely filed that actually covers their claims. And if you live in a world where piggybacking can simply not happen, it can't be a substantive right under the ADEA. That's not how substantive guarantees work. So even just sort of on its face, how piggybacking works in practice, it's not a substantive right to find anywhere in the ADEA. Statutes of limitations can be substantive, right? That's what your answers are. This is, I think, the most interesting question, and this is Thompson. So there are cases, and there's the divide, right? There's the choice of law cases that say statute of limitations can be substantive. And then, of course, there's the retroactivity cases that say they're procedural. What's going on there, and this is what's happening in the Thompson decision, is that there's a line of cases, starting with the Supreme Court in Davis, that says when Congress passes a self-contained statute where it creates the right and it creates the timeliness in a single federal statute, the timeliness, the limitations sort of carry with the right. That's why, for choice of law purposes, the statute of limitations are considered substantive. It's by the command of Congress. The Congress says this is the timeliness provision. But statute of limitations are still procedural. They don't enlarge or abridge the underlying right. But the key here, and this is why Thompson, why the Sixth Circuit precedent is the way it is, that you have Thompson saying statute of limitations is a substantive right and Logan saying but not an arbitration, is you get that character of statute of limitations by the command of Congress. And the ADEA says no civil action shall. But there isn't similar language. There's no similar command from Congress that says no civil action or arbitration shall commence. So the timeliness requirements, while they might carry with the civil action, they don't carry with arbitration. And that's exactly what the Sixth Circuit says in Logan. They say arbitration's different because the ADEA's timeliness requirements say nothing about arbitration. So you can't read it in the same way you can a congressional command about commencing a civil action. Well, what if the arbitration agreement said, you know, 10 days, where substantively, you know, as a practical matter you wouldn't be able to comply with that? That would be a substantive provision. You can think of cases where there's a really good effective identification argument. I mean, you can think about pre-employment agreements, which is where a lot of this, where Ragone, those cases with these concerns, and even Thompson, these are pre-employment agreements where people are saying 10 days, 30 days, before they've even started the job, let alone been terminated. That's not this case, right? These are severance agreements. These agreements are being agreed to on the same day you're getting fired. So you know if there's an issue with your termination, the clock starts now. And 180 days and 300 days. With due respect, Judge Pooler, that's Congress's command. Congress says that someone, someone has to have the charge filed within 180 days or 300 days, or there's no one. I mean, if there has to be, that's sort of the underlying tension of the argument. If it's the fact that no one could actually file a charge until after the EEOC process happened, there would be no charge to piggyback off of. How terrible would that be if they had to wait for the report, and then the clock ran from that instead of from termination? You'd have tremendously stale claims, and there's no guarantee that the EEOC will ever issue anything. That's why Gilmer says the EEOC process, the charge process, is separate from arbitration, and you don't wait. It doesn't preclude arbitration. You get the arbitration going. And that's Gilmer. That's Supreme Court. That's settled law. And so you may not like the result, but that is in fact the law. So all the people in Ross's, the case, the class action case, that's pending, did not sign the arbitration agreement. Is that correct? There are people who have signed the arbitration agreement and filed a timely charge, and I think that's my point is that for piggybacking to work, someone has to file the timely charge. Statute of timeliness doesn't go out the window. That's Tolliver. Tolliver says the reason why we don't have stale claims is we still require someone to file within the 180-day or 300-day period. That's why there's no effective vindication problem here, because Congress has determined that that is possible. Because they don't want the EEOC to be overburdened with 20,000 separate claims. That's the theory behind piggybacking. But it's not the theory behind the 180-day or 300-day rule. And Congress's command, Congress chose the timeliness requirements. We're not altering those. We're saying for arbitration, it's the same as if you had to file an EEOC charge, and that's why you can't say that it's not effective vindication for 100 and 300 days. And Judge Park, I'll defer on your 10-day question, because I think that's a hard question. But I think what you can't say as a matter of law when Congress tells you that that's sufficient time, that no, you have to wait for the EEOC. That's actually not taking the text of the ADEA and following it as written. But Congress also created the EEOC, did it not? It did. And in creating the EEOC and making the charge requirement, it only applied them to civil actions. If the ADEA said no civil action or arbitration shall commence until, this would be a different case. But Congress did not say that. Congress said no civil action shall commence, leaving arbitration to the world of the FAA. And that's why you can have, that's why the Sixth Circuit's precedent is what it is. It's saying in civil action context, we're talking about statute of limitations, so we're talking about Thompson. Logan and Morrison were arbitration. It doesn't, you know, it's a different set of rules. And I'd also commend to the court reading the Smith decision. We filed this with our 28J letter. The Smith decision, the 11th Circuit took this issue head on, and it's also an IBM arbitration agreement. And they took on directly the piggybacking issue and held that it's not a substantive right and that it doesn't have the command of Congress. It just, it can't trump the FAA because it's sort of, it's got the judge-made component to it. I'm going to shift to sealing, unless you guys, the motion, all the sealing issues, unless you guys have more questions on timeliness. And, okay, and maybe I should make one last point. We've never conceded, by the way, that any of these claims would be timely. That would be a piggybacking analysis that would require looking at an individual charge and matching it up against a complaint. That's a lot of work that has never been done in any of these cases, and we haven't conceded it. On sealing, I think the most salient point are the facts in this case. This is not Lugash, and this is not Joy. Lugash and Joy were sort of the run-of-the-mill sealing cases where you have parties exchanging documents and discovery. Some of them are confidential, and the confidential ones are subject to a protective order. Motions to dismiss have decided, summary judgments now teed up, and someone attaches some of the protective documents to a summary judgment. There aren't whole papers filed on behalf of a motion, a dispositive motion. Aren't they judicial papers, even if they're not looked at by the court? No, the court has actually said in Lugash that the mere fact of filing doesn't make you a judicial document. No, they found in Lugash that they were judicial documents. And that's because of the facts in that case. You have to read the holding of Lugash within the factual context. Which I have done, counsel. Thank you. Exactly. But in that case, you have a discovery process. Motions to dismiss are already decided. The adjudicatory process for the summary judgment motion is clearly implicated. Here, these documents, the sealed documents, aren't even part of the discovery in this case. But they were filed in the normal course as motion papers, that the fact that they weren't relied on does not make them less judicial records. I'm going to just kind of back up just real fast. They were filed in the motion for summary judgment. They were filed in- And the court never reached the motion for summary judgment because it dismissed the complaint on its face. Correct. But that doesn't change the character of the papers that were filed on behalf of summary judgment. It does because the adjudicatory process for the summary judgment motion was never invoked. You never got to the point. You could not consider the summary judgment documents as part of the motion to dismiss. It's not that they were not considered. They could not be considered. What Lugash says is that there was a right of access, but it may be weak compared to other rights of access. But they did not deny that there was a right of access. And again, the facts were different. The motion to dismiss had already been decided in that case. And you've got the motion for summary judgment teed up. They were hearing the motion for summary judgment. This case, the judges couldn't even say whether or not summary judgment was even in the ballgame until they decided the motion to dismiss first. And once they decided the motion to dismiss, and again, it's not a question of, though we didn't consider it,  And once the motion to dismiss was decided, the Article III controversy is gone. You can't just reach down and decide the summary judgment motion because you want to. So the adjudicatory process never attached to the summary judgment motion. Those weren't the facts in Lugash, and so you can't say that Lugash controls the outcome here. So you want us to say that those documents are not judicial documents with the presumption of public access because they weren't relied on? Because they were never part of the adjudicatory process. Because it would be the only corollary I could kind of think of in my mind is. How do you know if it's part of the adjudicatory process? Because it's ripe for decision. It's actually something that you can decide. So let me give you this example. It's the only one I can kind of keep straight in my head. You know, what would happen if parties filed a summary judgment motion and the court sua sponte said, I want you to brief subject matter jurisdiction. I'm not happy with my subject matter jurisdiction. You know, at that point, the summary judgment motions, they're off until the summary. So you can't decide issues until you've secured the article. That's not this case either, by the way. That's not this case either. But it is much closer to this case because the motion to dismiss cuts off your jurisdiction. You no longer can entertain the summary judgment motion. And so to me, that's the direct analogy. Well, it's a seriatim decision. The judges in these cases looked at the motion to dismiss first. But they knew there was a motion for summary judgment, and motion papers had been filed on behalf of that motion. You can't say they weren't filed. But that still doesn't make it part of a judicial document. And you think of it, you know, what's the purpose of the access doctrine? Let me ask you, what's the purpose of sealing everything? Well, first, these documents are highly confidential documents that concern, you know, people at IBI. I'm trying to answer the question without giving away the content. What was highly confidential? What you were paying each of the people? Well, the things that are governed by the confidentiality agreements include the arbitration award. You know, what happened in arbitration and the documents that were. And so these are all covered by the confidentiality agreements. And I'm asking you, what was so important to keep it all secret? I feel a little challenged to answer that in open court without disclosing the contents of the documents. Don't refer to anything that's secret. But tell me what the theory of the sealing was so that no one could know what anyone else achieved in arbitration. So there's two theories. The first theory is that these are all subject to the confidentiality agreements. And again, these are confidentiality agreements of third parties that aren't before this court. None of these documents came through discovery in these arbitrations. There was no discovery in these arbitrations. What counsel has done is, as plaintiff's counsel for other people, she's taken documents that she's had produced in other confidential arbitrations under confidentiality agreements that aren't before this court, the third-party agreements, and she's trying to bring them into this action. So these were arguably included in breach of confidentiality agreements? They were flatly in breach of confidentiality agreements. In that type of situation, do we even apply this test where we look at whether they're judicial documents? Or the district court in the Chandler case, it looked like, just stopped at the confidentiality agreement. And I wonder if that's a more sensible way to approach this.  One is judicial documents. One is that maybe it has some flavor of a judicial document, but because it's in flat violation of a third-party confidentiality agreement and it wasn't actually considered by the court, the weight is so low that there's no public access. And then the Chandler court said, this is just a flat-out breach of third-party confidentiality agreements.  How does the court even have the authority to decide the issue of the reach of the confidentiality agreement that's between other people when it's offered in this case? I mean, your opponent argues about, you know, that it's unconscionable under New York law, etc. But why would we even entertain that when the real issue is if it's unconscionable as to other individuals who aren't before the court? It seems like we're kind of gone a bit afield. Yep, that's an excellent question, Judge Wesley. And I think the right answer is that you can determine unconscionability on the face of the confidentiality agreements at issue here. You can make a facial determination, but you can't look at documents that were obtained in other proceedings where you don't know how they got in or why they got in and make a determination about that. That's almost like an as-applied challenge in someone else's case. It would be one thing if there were documents that might be covered by a confidentiality agreement that had been disclosed by discovery within the confines of this and were offered to rebut or to establish that there was a material issue of fact in opposition to the motion for summary judgment. And that might- It'd be typical. Have bleed over into a motion to dismiss. But if these are all documents that don't come from this proceeding but with regard to others, obtained from others, it seems a bit disengaged. Correct. And that's what I think got both Judge Furman and Judge Cattell at the root. That's the cause of their decisions, which is this is not the way that you challenge confidentiality. And you can look at the face of it, but this is a- Excuse my language, but this is an attempt to weaponize the public access doctrine, taking documents- But we're in the business of rulemaking. Exactly. So what we say- I mean, Judge Furman said, well, these aren't judicial documents because I'm not going to get to that. He's a congregent there. But when we say something about judicial documents, its reach goes beyond just the fact. Others will read it as a black-letter rule beyond the facts and the context in which it was established, whereas Judge Park was then talking about the fact that, well, these are breaches of other confidentiality agreements that might be a more limiting principle I'm looking at. What is in the nature of arbitration awards that makes them sealable, especially if the person who brought the arbitration is willing to share that with other people in the same position also seeking arbitration? What is offensive to you about them sharing their documents on the awards? Your Honor, you said it yourself in Guyton that confidentiality is the hallmark of arbitration. And if you allow a plaintiff to do what she's doing here, which is take documents from other cases- Other arbit- Arbitration- Similarly situated. Let's say persons who are similarly situated to the person in front of the court. They want to share their arbitration awards. What is so offensive to IBM about that? But, Your Honor, that's class or collective discovery, and that's prohibited in the arbitration agreement. These plaintiffs, and the collective action that was Estill, no collective action provision has been upheld by this court. And you can't, you're rewriting the arbitration agreement to say, well, there's no collective action, but we'll give you class discovery. That's not how it works. You enforce- Well, it's not formal discovery. I went through arbitration, and I am willing to share the written award with my colleague who sat next to me at IBM, who's also going through arbitration. What is wrong with that? Because it violates the confidentiality provisions of that. The whole FAA is premised on- But who is supposed to be protected by the confidentiality? The FAA, I mean, it's the congressional command that you enforce the arbitration agreement's terms as written, unless, with the 14 Penn Plaza caveat, it's not effective vindication. The parties agreed to this. Their agreement under the command of the FAA is entitled to be enforced as written. This agreement says we're not doing collective or class actions, and you can't, it would be fundamentally rewriting the agreement to say, well, now you can have collective action discovery. That's not what the parties agreed to, and the FAA says the courts just can't rewrite the agreements the way they want to. That's the problem with that. If they wanted a different arbitration agreement, could have negotiated a different arbitration agreement. Well, IBM drafted all these arbitration agreements, didn't it? And paid severance, yes. But that's how arbitration works. It's fundamentally cutting at the arbitration agreement itself to say, even though you agreed to X, we're not going to allow it. And back to Judge Wesley's point, there has been, there's no argument that the arbitration agreement itself is unconscionable. Plaintiffs conceded, I heard her twice, that this is subject to arbitration. So there's no claim here that the overall arbitration agreement is somehow substantively unconscionable and should go away. I don't think anyone made that claim. But to do, to start to rewrite the arbitration agreement in these ways is fundamentally, is fundamentally changing the arbitration agreement itself in ways that aren't being challenged here. I've got two minutes and about eight issues. So that's, the timing doesn't work. So we can do this a couple of ways. I can just stop talking and answer any questions you guys have on the remaining issues, which we really haven't talked about, ripeness, the declaratory judgment, the motion to amend, or I can just try to get power through this as fast as I can, whatever you all want to do. To power through? It's up to you. Okay. Up to you. So then the last common issue is confidentiality ripeness. And I'm just going to make two points on this. The first point is that the district court judges were correct below that if you decide timeliness in our favor, there's no reason to reach the confidentiality issue, because the confidentiality issue is all about what discovery you are going to obtain in arbitrations. And if we prevail on timeliness, there are no arbitrations, so the issue is moot. But, Judge Wesley, I think this issue that we've been talking about, it's a secondary ripeness problem, that even if you disagree with us on timeliness, there has been no discovery in this case, and plaintiffs have to go back and create a record of discovery with respect to these arbitrations and then bring that up through a motion to vacate. So I think there's really two layers of ripeness issues with the confidentiality arguments. I'm going to kind of go slightly out of order and talk about Lody. You know, the question in Lody is whether having your own right to sue letter changes your timeliness analysis. And I think actually here it makes the case easier, because Lody cannot prove that she could not effectively vindicate her rights. She was able to file a charge within the 300-day requirement. She got it done. There's no reason she couldn't have handed it to IBM. I see my time is up. I can sit down or answer any questions. There were just so many issues. I don't want to leave anything unanswered. Thank you, counsel. Why don't you wait for a minute before starting rebuttal? I guess they didn't want to get the whole argument. The rebuttal is the best part. It's like leaving before they serve you the dessert. Okay. Thank you. Your honors, what Congress said in enacting the ADA the way it did is that those who may have age discrimination claims should file their charges with the EEOC within 180 or 300 days, not that they had to go all the way to court or arbitration right off the bat. So the point that I'm trying to make is that that right, which is discussed extensively in Thompson and Logan, was taken away from these employees because it's very easy to file an EEOC charge.  You don't need a lawyer. You let the EEOC do the heavy lifting of investigating. I don't understand why your attack isn't on the arbitrability itself. Because your argument makes a lot of sense to me when you say, look, these folks don't know if they have a claim. And the EEOC process has a way of sorting it out. Correct. And then kind of distributing that information. And you're right. I think that's the way it's structured. And there's kind of a given and taken. And then there's a decision by the individual. They can go ahead and sue. They wait a certain period of time. Then they go ahead and sue. But that's not in the arbitration process. The arbitration process is 300 days is measured by filing a claim and commence the arbitration. So you don't necessarily get the benefit of that. And if that's so inherently – and I get the argument. Sure. But you're not here saying that a court erred in not finding this agreement, waiving that right, voidable. And, therefore, you retained the right to go through the EEOC and have a civil action. Yes. This waiver waived the right so substantially that it violates federal law. No, we saw it as a substantively unconscionable provision that we wouldn't know for sure was substantively unconscionable until we got to arbitration. We didn't attack the arbitration clause altogether because we knew we didn't have procedural unconscionability, which is what we would have needed to get out of arbitration altogether. But you knew – I'm not finding fault with you, Ms. Ritter. I'm just saying that the disconnect problem I have with your argument is that you might have known it for Plaintiff X, Y, and Z because of the particulars of their case. But they knew the structure. I would have thought the argument would be, IBM didn't have the right to force these people into arbitration because it disconnected them from the EEOC process, which is the one way they would know whether they did or did not have a claim. You disconnected them from it, and it's meaningless. Right. And that's a substantively unconscionable provision that, like in Ragone, can and should be severed. But did you move to stay arbitration or vacate arbitration? Yes, Your Honor. I want to use my rebuttal time to get to it. Well, I'm sorry, but I have to answer the question. Yes, Your Honor, yes. And I have to vote, so tell me the answer. Yes, yes. So here's what we did. We knew under American Life, we knew under the First Circuit case that said you have to go to arbitration and build your record first before challenging something as unenforceable. That's what we did. We didn't challenge the arbitration altogether because we knew we didn't have procedural unconscionability. We thought if the arbitrators, and some of them agreed with us, so it was ambiguous. But a lot of the arbitrators said, no, you don't get piggybacking. We didn't realize that's what they were going to say. But once they said that, we came back to court and sought a declaratory judgment that that couldn't be enforced because the OWBPA was not complied with. Are you stuck with the form that you got and that the arbitrator could make a mistake of law? If four arbitrators make decisions, two went one way and two went the other, aren't you stuck with the fact that you don't like the two arbitrators that ruled against you? No, no, because we're not just saying the arbitrator was wrong. We're saying, okay, maybe the arbitrators were right that this agreement required filing within 300 days. And if that is the case, if that is the way that ambiguous term gets interpreted, it's not enforceable. And the only place to correct that is in court because IBM's arbitration agreement said if you have a challenge to a provision of the arbitration agreement, that has to be decided in court, not in arbitration. We couldn't come straight to court. We couldn't ask arbitrators to stay this while we went to court to ask that because we didn't know yet how the arbitrators would rule. That's why we didn't do that. The Soto case that is in our briefs from the First Circuit said that. The American Life Guidant from the Second Circuit said that until you know that this is going to be an impediment to you, you can't challenge it in court. So that is exactly why we did that. Now, while defense got to cite one case that wasn't in their brief, I'm going to offer another case that wasn't in our brief. Ramirez v. Charter Communications, Inc., 75 Cal App, 5th, 365 at 375. Also, like Thompson, talks about the importance of the administrative process and the rights that employees have to that conciliation process. Yes, some decided to go ahead and file quickly with the EEOC, like Ms. Lodi. We do have other clients who did file, who got terminated very close in time to when we had filed at the Rusis case. So some of them were able to proceed in arbitration because they were timely even under the 300-day rule. Many, many were not because they didn't know until they started hearing about it from their coworkers and in the news and after 2020 when the EEOC reached its finding that they had a real claim of age discrimination. It's harder to bring a claim just on your own, get a lawyer, than just file at the EEOC and see what comes of the investigative process. And these plaintiffs all lost that substantive right, which is talked about in Thompson, as well as in Logan. If I can just quickly get to a couple of other issues. Logan distinguished Morrison, which had said this doesn't apply to arbitration, but in Morrison it would have been dicta because there the plaintiff wasn't actually impeded by the shortened statute of limitations. Again, I want to highlight in our briefs Morgan v. Sundance. The Supreme Court has said you can't have different, better rules applied to arbitration than to court. Arbitration is not to be put on a pedestal. So saying, Judge Wesley, that it was okay to waive all of these things because in arbitration you just might not get that benefit of the EEOC, you can't do that because of Gilmore, because the OWEPA wasn't complied with, because arbitration is not to be put on a pedestal. You need to have the same rights that you would have had in arbitration. I'm going to just talk very briefly about ceiling. Yes. I would urge this court to read Judge Lyman's decision in the loan, where he completely analyzes Lugos and explains why this falls directly into Lugos. As Judge Lyman said, it was IBM in all of these cases that agreed that our summary judgment motion should be filed before its motion to dismiss. So it's of no moment that the courts granted the motions to dismiss. IBM agreed that we should file our summary judgment motion, and we did. The issue, and also the issue cited in Lugos, which Judge Lyman talks about in loan, is that it's not just whether the judge did look at the papers, but the public should have a right of access to evaluate whether the court was correct in not looking at the papers. Just briefly on Guyton, Your Honor. You said, Judge Pooler, that confidentiality is just a hallmark of arbitration, and that's why it wasn't stricken in Guyton. I just want to distinguish this case, because in Guyton it was a Sarbanes-Oxley claim where the plaintiff was saying other people should have the right of access to my information. That didn't prevent that plaintiff from pursuing her claim. Here, the plaintiff's claim that they were prevented from getting other people's information, and as Judge Lyman said in loan, we did this the only way we could. Under American Family Life, the way to build our record, that the confidentiality agreement of IBM was precluding everybody from being able to pursue their claims was because we had to build this record. He said it was a non-frivolous way to do it. No court has actually analyzed whether our record proved it, and I would urge this court to remand on this point, to have a district court actually determine if we proved the case that the confidentiality clause impeded these claims. Sharing documents are extremely important to pattern and practice cases of discrimination, which this court has recognized. Thank you, counsel. Thank you both. We'll take all the cases under advisement. Very nice argument. Thank you, Your Honor. Thank you. And the last case on the calendar for today is on submission, so that concludes our business for today. I'll ask the courtroom deputy to adjourn. Court is adjourned.